IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.   Criminal Action No. 3:11cr156

**CHRISTOPHER DION HARRIS,**

Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Christopher Dion Harris's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 194.) Counsel for Harris filed a Supplemental Memorandum. (ECF No. 201.) The United States responded in opposition (the "Opposition"). (ECF No. 202.) Harris filed a reply (the "Reply"). (ECF No. 203.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

**I. Background**

On January 3, 2012, the United States named Harris as a defendant in a one-count Criminal Information for Conspiracy to Distribute and Possess with the Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, beginning in August 2009, and continuing through September 2011. (ECF No. 45.) That same day, Harris entered a guilty plea to the Criminal Information. (Plea Agr. ¶ 1, ECF No. 58.) The Statement of Facts further explained that on May 17, 2011, law enforcement officials searched an apartment in Richmond, Virginia and recovered three firearms, a 20-ton hydraulic press

containing approximately 900 grams of heroin, multiple blenders, cutting agents, and cell phones. (Statement of Facts 1–2, ECF No. 59.) During the search, Harris was present in the apartment and arrested. (*Id.*) The Parties stipulated in the signed Statement of Facts that Harris "conspired with others to distribute and possess with the intent to distribute 913.2 grams of heroin, a schedule I controlled substance." (*Id.* 2.)

Prior to sentencing, a Probation Officer determined that Harris, along with codefendant Walter Mitchell, "had their brothers contact and intimidate a prospective witness following their arrest on the instant offense in order to deter [the witness] from testifying against them." (Presentence Investigation Report ("PSR") ¶ 33, ECF No. 196.) After the Probation Officer applied an obstruction adjustment pursuant to U.S.S.G. § 3C1.1 and a two-level increase for possessing a dangerous weapon, Harris faced a total offense level of 34. (*Id.* 40; Sent'g Pos. 7, ECF No. 86.)

The Probation Officer also determined based on Harris's prior convictions that his criminal history designated him a career offender.[1] (PSR 41–43.) Based on his career-offender status, which placed him in Criminal History Category VI, Harris faced a Sentencing Guidelines range of 210 to 262 months' imprisonment. (PSR 34; Sent'g Pos. 13, ECF No. 86.) Absent his career offender status, Harris would have been placed in Criminal History Category V based on his criminal history points. (PSR 44.)

---

[1] The PSR states that Harris constitutes a career offender based on "a prior felony controlled substance conviction and two convictions of a crime of violence." (*Id.* ¶ 64.) The PSR lists prior Virginia convictions for: (1) malicious wounding; (2) robbery; (3) voluntary manslaughter; (4) possession of cocaine; and, (5) possession of cocaine with intent to distribute. (PSR 14–26.) The Parties do not identify which prior convictions constitute predicate offenses for Harris's career offender status, nor do they contend that any change in precedent case law since Harris's 2011 conviction has changed this status.

At sentencing, the Court determined the drug quantity, applied the obstruction enhancement, and recognized the presence of firearms at the scene of the crime, confirming Harris's total offense level of 34.  (Sent. Tr. 48–49, ECF No. 106.)  The Court also observed that Harris played a lesser role in the conspiracy compared to his codefendants.  (*Id*.)  After finding that the career-offender enhancement skewed Harris's Guidelines range, the Court sentenced him to 192 months of imprisonment—18 months below the low end of the Guidelines range—and four years of supervised release.  (*Id.* 50–54; J. 2–3, ECF No. 97.)  Harris did not appeal.  Harris later sought postconviction relief through filing a 28 U.S.C. § 2255 motion, which this Court denied.  (ECF Nos. 158, 168, 169.)  The Court later reduced Harris's sentence to 150 months' imprisonment.  (ECF No. 137.)

Harris is currently housed at USP Lee.  The Bureau of Prisons ("BOP") states that Harris will be moved to a residential reentry center in July 2021, and that he will be released roughly six months later, on January 9, 2022.  *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.  As of December 21, 2020, the BOP currently reports that 171 inmates at USP Lee have tested positive for COVID-19.  *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

On September 22, 2020, Harris submitted a request for compassionate release to the Warden of USP Lee.  (Supp. Mem. 3, ECF No. 201.)  On September 28, 2020, the Warden denied that request.  (*Id*. 3, ECF No. 201-3.)  On October 19, 2020, Harris filed the instant Motion for Compassionate Release.  (Mot., ECF No. 194.)  Thereafter, Counsel for Harris filed a Supplemental Memorandum with exhibits in support.  (ECF No. 201.)

In the Motion and Supplemental Memorandum, Harris describes the current public health crisis caused by COVID-19.  (*See e.g.*, Mot. 1–3; Supp. Mem. 3–14.)  Harris, currently forty-

3

seven-years old, contends that he suffers from "obesity and hypertension, placing him at elevated risk of severe complications or death should he contract COVID-19, which is present at USP Lee where he is incarcerated." (Supp. Mem. 1.) Harris avers that "during his incarceration, [he] has made substantial rehabilitative efforts, which include obtaining his GED and earning the opportunity to work in food service."[2] (*Id*.) Harris also emphasizes "that he has not received a disciplinary infraction" in nine years. (*Id*.) Harris proposes living with his mother in Richmond, Virginia upon release, in a four bedroom house that allows for greater social distancing. (ECF No. 201-4.)

The United States opposes Harris's request for compassionate release, arguing that no extraordinary or compelling reasons exist to support his request because the record does not adequately support his claims of obesity and hypertension. (Opp'n 10, ECF No. 202.) The United States criticizes Harris for failing to provide "independent or medical documentation to confirm his weight." (*Id*.) The United States similarly faults Harris for lacking "medical diagnoses or additional blood pressure readings to back up his contention" that he suffers from hypertension. (*Id.* 11.) In any event, the United States argues that the Court should not grant Harris compassionate release because he "possess[ed] with the intent to distribute over 913 grams of heroin, inside a hydraulic press, with three firearms in the near vicinity, [so he] must be considered a dangerous gun-toting drug dealer who still poses a threat the community." (*Id.* 15.) The United States also notes that Harris has a prior adult conviction "for Voluntary Manslaughter and Use of a Firearm in a Commission of a Murder in 1995 in Richmond City Circuit Court."[3]

---

[2] The PSR reflects that Harris first obtained his GED in 1998 while in state prison. (PSR ¶ 92.)

[3] For this argument the United States cites paragraph 45 in Harris's PSR. As the PSR explains, Harris "was indicted for Murder of Richard DeWayne Smalls and Use of a Firearm in

4

(*Id*. 16.) "Based on the number of prior convictions, the nature of the convictions, and his recidivist behavior," the United States asserts that "the defendant has no respect for the law and is strongly in need of deterrence." (*Id*. 17.)

On December 21, 2020, Counsel for Harris filed a supplement to his Motion (the "Supplement"), providing medical records that confirm Harris's weight categorizes him as obese. (Supp. 2, ECF No. 205.) The Supplement also explains that USP Lee is currently experiencing a COVID-19 outbreak. (*Id*.) The United States has not responded to the Supplement.

## II.  Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[4] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

the Commission of the Murder of Richard DeWayne Smalls, but . . . the jury found him guilty of Voluntary Manslaughter [rather] than Murder." (PSR ¶ 45.)  *See also Jenkins v. Commonwealth*, 423 S.E.2d 360, 368 (1992) ("To reduce homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." (quoting *Barrett v. Commonwealth*, 341 S.E.2d 190, 192 (Va. 1986))); *Rhodes v. Commonwealth*, 583 S.E.2d 773, 775 (Va. Ct. App. 2003) ("A killing done in the heat of passion and upon reasonable provocation will reduce a homicide from murder to voluntary manslaughter.").

[4] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

    A.    **<u>Exhaustion of Administrative Remedies</u>**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *8 (4th Cir. Dec. 2, 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request

---

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[5]

The United States Court of Appeals for the Fourth Circuit recently explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency

---

[5] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

requirement does not constrain the discretion of district courts." *McCoy*, 2020 WL 7050097, at *7.  "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at *8.  As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15cr0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17cr0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)).

      C.      **Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence.  18 U.S.C. § 3582(c)(1)(A).  The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense.  18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release further instructs Courts to consider the 18 U.S.C. § 3142(g) factors.  U.S.S.G. § 1B1.13.  These include "the

nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion because Harris does not present extraordinary and compelling circumstances sufficient to necessitate compassionate release.

The Court first determines that Harris has sufficiently exhausted his administrative remedies. Next, the Court finds that the record does not show Harris's health conditions constitute extraordinary and compelling circumstances that render him eligible for compassionate release consideration. Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added). Here, Harris asserts that he faces a particular vulnerability to COVID-19 because of the conditions at USP Lee together with his obesity and hypertension, which create an extraordinary and compelling reason to grant compassionate release. While Harris contends that the conditions of his confinement and health concerns create a particularized risk of contracting the disease, he does not provide medical records to show that he suffers a particularized susceptibility to the disease. (*See* ECF Nos. 201, 205.) The limited medical records that he does provide show a "stable" patient with a blood pressure reading of 138/84. (ECF No. 201-5 at 2.) The Supplement similarly presents scant evidence of any serious medical concern, showing only that Harris weighs 238.6 pounds. (Supp., ECF No. 205-1.) Harris, a seemingly healthy middle-aged person, presents no other ailments apart from these

10

limited records. His claims of moderate hypertension and obesity, without more, do not persuade this Court to grant compassionate release.

Even if Harris's medical conditions entitled him to compassionate release consideration, the Court finds that the relevant statutory sentencing factors and the relevant Guidelines policy statement do not support immediate release. Pursuant to U.S.S.G. § 1B1.13, the Court must consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the reduction is consistent with the policy statement. Upon review, Harris's criminal history and underlying convictions demonstrate that he presents a serious threat to the public because he qualified as a career offender prior to the underlying 2011 offense based on prior convictions for voluntary manslaughter, possession of cocaine, and possession of cocaine with intent to distribute. He also engaged in witness tampering in this case. Most concerningly, Harris has more than one offense involving firearms, which raises concerns about public safety should he be released. After reviewing the § 3142(g) factors, the Court determines that Harris presents a danger to the community and should not be immediately released.

Turning to the § 3553(a) factors, the Court acknowledges that Harris has served most of his sentence and will move to a residential re-entry center in roughly six months. Additionally, upon release, Harris will begin to serve a four-year supervised release term for his offense. While the Court finds that this sentence adequately deters criminal conduct, the Court also observes that the seriousness of Harris's offense and the need to protect the public outweigh immediate release.

Harris further contends that the Court should grant his Motion because he has made demonstrable efforts while in prison to improve himself and has had good conduct for several

years. In *United States v. Martin*, the Fourth Circuit vacated and remanded the District Court's denial of both defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397.

Here, Harris has shown significant progress and rehabilitation through his current prison term. Harris has not received a single disciplinary infraction over the past nine years, an accomplishment that this Court rarely sees. (ECF No. 41-3.) His disciplinary record and rehabilitative efforts while in prison are commendable. Nonetheless, in light of the seriousness of Harris's crimes, his criminal history, and the lack of documented health concerns, the Court concludes that the record before it does not justify Harris's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will deny the Motion. (ECF No. 194.)

/s/
M. Hannah Lauck
United States District Judge

Date: December 23, 2020
Richmond, Virginia